UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
JUL 12 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-385-GWU

BILLY WAGERS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Wagers

> Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Wagers

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Wagers

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Billy Wagers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of migraine headaches, osteoarthritis of the bilateral knees, a history of lumbar strain/sprain with complaints of back pain, an anxiety disorder, and estimated borderline intellectual functioning. (Tr. 21). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Wagers retained the residual functional capacity to perform his past relevant work and, accordingly, was not entitled to benefits. (Tr. 22-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age 37 years, ninth grade education in special education, and unskilled work experience could perform any jobs if he were limited to medium level exertion, with only occasional stooping, crouching, or crawling, and would be limited to only simple instructions and tasks, in object or task-focused settings that did not require

public contact. (Tr. 661). The VE responded that with these restrictions, Mr. Wagers could return to his past relevant work as a produce stocker, bagger, or industrial cleaner. (Id.).

On appeal, the plaintiff challenges the mental functional restrictions selected by the ALJ. On review of the evidence, the Court agrees that the mental factors were not supported by substantial evidence.

The plaintiff, who alleged nervousness and inability to tolerate noise or crowds (Tr. 66, 652, 657, 659) was evaluated by a psychologist, Mr. James Leisenring, on September 5, 2003. (Tr. 197). Mr. Leisenring "speculated" that the plaintiff would be compromised in his ability to respond appropriately to supervision, co-workers, and work pressures in a work setting due to a "seemingly legitimate" anxiety disorder, but his primary diagnosis was "blatant malingering" on intelligence and achievement testing (Tr. 200-2). He felt that the only safe conclusion was that the plaintiff represented a case of "won't " instead of "can't." (Tr. 201).

A state agency psychologist, Lea J. Perritt, reviewed the record at this point and concluded that there was insufficient evidence to make an accurate assessment of the plaintiff's mental status due to the malingering. (Tr. 515).

Subsequently, the plaintiff submitted evidence of treatment from the Comprehensive Care Center, where the staff psychiatrist, Dr. John Schremly, initially interviewed Mr. Wagers on July 24, 2003 and noted that he appeared to be having

8

trouble concentrating and appeared to be "sincere and forthright." (Tr. 496). His diagnostic impression was also an anxiety disorder and estimated borderline intellectual functioning, and he assigned a current Global Assessment of Functioning (GAF) score of 50. (Id.). A GAF of 50 represents "serious impairment in social, occupational, or school functioning" per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. Dr. Schremly prescribed several psychotropic medications, which were changed over the next few visits without any additional indication of functional limitations. (Tr. 488-95). As of January, 2004, a counselor indicated that the plaintiff's diagnosis remained the same. (Tr. 487).

Another state agency psychologist, Dr. Edward Stodola, thereupon reviewed the record and concluded that Mr. Wagers would have a "moderately limited" ability to handle detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 517-18).

More evidence from the CCC, including notes from Dr. Schremly and a counselor, were then submitted for the period of January through September, 2004.

(Tr. 581-97). The ALJ summarized these notes by stating that on January 16, 2004, Dr. Schremly indicated that the claimant seemed to be satisfied with his medications and was not having any side effects, and that subsequent treatment notes reveal that the plaintiff was continued on his current medications. (Tr. 19). This is somewhat inaccurate in that the plaintiff later had difficulty obtaining Seroquel and Dr. Schremly apparently ordered him to stop taking Lexapro and try Cymbalta. (Tr. 579, 581).

The ALJ did not mention either the GAF score of 50 or the opinion of the state agency reviewers. The plaintiff argues that the ALJ intended to follow Dr. Stodola's report as regards limitations, but omitted reference to some of the items such as working in coordination with the proximity to others, completing a normal workday and workweek, and performing at a consistent pace. The Commissioner responds that any error was harmless, because the ALJ was not bound by the opinion of a state agency reviewer and because Dr. Schremly's office note from March 11, 2004 reflects the plaintiff's statement that the medications were helping him and he was not aware of being depressed or nervous any longer. (Tr. 594).

While the Commissioner is correct that the opinion of a state agency reviewer is not necessarily binding, the regulations also provide that the findings of these "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation" must be considered as opinion evidence, except for the ultimate

10

Wagers

determination of disability. 20 C.F.R. Section 404.1527(f)(2)(i). Since the state agency reviewers were not even mentioned in the ALJ's decision, the Court cannot agree that the regulations were followed. Social Security Ruling 85-15 provides that a:

> decisionmaker must not assume that failure to meet or equal a listed impairment equates with a capacity to do at least unskilled work . . . . The basic demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these work-related activities would severely limit the potential occupational base.

SSR 85-15, p. 4. Thus, the restrictions identified by Dr. Stodola could be significant in terms of Mr. Wagers' ability to perform his past relevant work.

The Commissioner's argument that the hypothetical question was consistent with Dr. Stodola's report is unpersuasive in that it is based only on the general "elaborations on the preceding capacities" contained in Part III of Dr. Stodola's report. (Tr. 519). With regard to Dr. Schremly's March 11, 2004 office note, it was followed by notes from the plaintiff's counselor at the CCC that by August, the plaintiff did not feel any of his medications were working, that he had had panic attacks, and he continued to be nervous about his physical condition. (Tr. 584). In September, 2004, he told a counselor that he was made nervous by noise, such as from his father's chickens. (Tr. 581). Viewed as a whole, the subsequent CCC

11

Wagers

notes do not clearly establish that Mr. Wagers was improved on medication to the point that the restrictions given by Dr. Stodola were no longer applicable. Even these minimal restrictions would have been more persuasive if the GAF score had been clearly taken into account.

The decision will be remanded for further consideration.

This the __/2__ day of July, 2006.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE